THE PEOPLE *ex rel.* William Schaumleffel, Plaintiff in Error, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Defendant in Error.

*Opinion filed October 26, 1909.*

1. MANDAMUS—*a writ will be awarded only when clear case is made.* A writ of *mandamus* will be awarded only where the party applying for the writ shows a clear right to it and a clear legal duty on the part of the defendant to perform the act sought to be enforced.

2. SAME—*when question of unlawful consolidation of railroads cannot be inquired into.* Whether the acts of a railroad company in making and carrying out a contract for the use of another company's tracks between certain points amount to an unlawful consolidation, control and operation of a parallel and competing line is a question which can be raised only by the State in a direct proceeding to forfeit the franchise, and cannot be raised in a *mandamus* proceeding to require the company to run passenger and freight trains over its original line, in both directions, between certain points, to accommodate the relator and his neighbors.

3. RAILROADS—*what does not amount to a re-location of a railroad.* Where a double track is necessary for the proper handling of a railroad company's business between certain points and the nature of the country makes it practically impossible to build a second track paralleling the original line so as to safely handle passengers and freight in both directions between such points, the making of an arrangement for the use of another company's tracks between such points for the purpose of handling part of the lessee's business is not an unlawful re-location of its railroad.

4. SAME—*railroad has certain discretion in operating its road.* A railroad company has a certain discretion in the management of its road and the running of its trains, and while it is to some extent subject to control by the courts, the courts have no power to interfere unless it appears that the company is not complying with its duty, under the law, as a common carrier.

5. SAME—*a company will not be required to provide facilities for demands that may never exist.* A railroad company will not be compelled by the courts to furnish facilities to the relator not shown to be necessary to supply any existing want or demand but merely to anticipate needs that may arise at some future time if the relator should develop a coal mine on his land and create a necessity for such facilities.

6. SAME—*what is not ground for compelling a railroad to run trains in both directions on original line.* Where a railroad company, owing to the steepness of grades, operates trains in only one direction between certain points on its original line and uses another line for other trains, the fact that there is no public road for part of the intervening three-fourths of a mile between the depots on the respective lines at a certain station does not require that the company be compelled to run trains in both directions on the original line to accommodate people living nearer to the depot on that line than to the depot on the other line.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

Plaintiff in error filed a petition for *mandamus* in the circuit court of St. Clair county, alleging that the St. Louis, Alton and Terre Haute Railroad Company, a corporation organized under the laws of this State, owned or controlled and operated a railroad from the city of East St. Louis to the city of Belleville, in St. Clair county, Illinois, from the year 1855 until 1896, and during said time ran freight and passenger trains in both directions over said road; that there was a station established on said railroad called Ogle, where passengers were received and discharged by all regular trains running both ways. It is alleged that in 1896, by means of a contract or agreement, the defendant in error obtained control of said line of railroad and since then has operated the same; that since the year 1898 it has ceased to operate said railroad according to the usual methods of operating railroads, and that the service to the public upon the said railroad is only in one direction, no passenger or freight trains being run from East St. Louis to Belleville; that the said Ogle station is still maintained by defendant in error for the purpose of receiving and discharging passengers to and from its trains operated in one direction only, and that but one train stops there daily, and it runs

from Belleville to East St. Louis. It is further alleged that plaintiff in error is the owner of and resides on a large tract of land lying about one hundred yards from Ogle station; that he, with the general public, is interested in having the trains on said railroad run in both directions and to receive and discharge passengers at said station; that if trains on said railroad ran both ways and passengers were received and discharged at Ogle station, he and several hundred other residents of that vicinity would frequently have occasion to travel on said railroad, but as it is now operated they are deprived of the use and accommodation of the railroad, which it is the duty of defendant in error to furnish; that he is now compelled to go a mile in order to take a train or car, while he would only have to go one hundred yards if defendant in error operated its railroad in a proper manner. It is further alleged that there is an eight-foot vein of coal underlying the land of plaintiff in error, which, when raised to the surface of the ground, would be worth $500,000; that because of the failure of the defendant in error to run its trains toward the city of Belleville from East St. Louis, loaded cars are not drawn in that direction and empty cars are not returned from East St. Louis, and thereby the shipping of coal in either direction is greatly hindered, the business of opening and operating a coal mine on said tract of land prevented and the value of said coal to plaintiff in error practically destroyed; that a coal mine on said tract of land would be an industry of vast interest to the general public as well as to plaintiff in error. It is alleged that it is the duty of defendant in error, under the law, to run its trains both ways on said railroad and to receive and discharge passengers at said Ogle station, and unless it is compelled by *mandamus* to so operate its trains it will continue to operate them as it now does and as above set forth. The petition prays for a writ of *mandamus* directed to defendant in error, commanding it to operate regular and proper trains, both freight and

passenger, over said railroad in both directions between the cities of East St. Louis and Belleville, and that it stop its passenger trains to receive and discharge passengers at said Ogle station.

The defendant in error answered the petition, admitting that the St. Louis, Alton and Terre Haute Railroad Company formerly operated the railroad in question between the cities of East St. Louis and Belleville and during said time it carried passengers and freight in both directions between said cities; that since about the year 1895 said railroad had been operated by defendant in error, and while so operated trains had been run and passengers and freight transported in but one direction,—that is, from Belleville to East St. Louis. The answer denies that plaintiff in error or the People of the State of Illinois have any interest in having trains operated or freight and passengers carried in both directions between said cities or that they are injured thereby, and denies that plaintiff in error is entitled to the relief demanded. It is then alleged that in May, 1896, the defendant in error entered into a contract with the St. Louis, Belleville and Southern Railway Company, a corporation organized under the laws of this State, which was then the owner and operator of a railroad running from the city of East St. Louis to the city of Belleville, whereby defendant in error acquired the right to run its trains over the tracks of said Southern Railway Company between said cities, and by virtue of said contract it has since that date operated its passenger and freight trains running from East St. Louis to Belleville over the tracks of said Southern Railway Company. It is further alleged that Belleville is about fourteen miles from East St. Louis, and that from East St. Louis to the station of Church, a point about midway between said cities, said railroad lines run parallel, and at no place between East St. Louis and the station of Church are said railroad lines more than three hundred feet apart; that about one-half mile east of said station of Church there are

high bluffs, over which it is necessary to pass in going from East St. Louis to Belleville, and it is impossible to construct a railway line between said station of Church and the city of Belleville on a direct line so that passengers and freight can be safely moved between said points, and it is necessary in the construction of said railway line over the aforesaid bluff to some extent to wind the bluff for the purpose of securing a proper and suitable grade. It is further alleged that defendant in error, after acquiring the use of the railway line of the St. Louis, Alton and Terre Haute Railroad Company between the said cities of Belleville and East St. Louis spent a large amount of money in the improvement of said line, so that its trains might be operated with safety and it thus be able to discharge its duties and obligations as a common carrier; that after said improvement had been made defendant in error ascertained that said line between the station of Church and the city of Belleville could not be constructed so a suitable grade could be had and passengers and freight could be moved over said line in both directions, and it thereby became necessary to enter into the contract with the Southern Railway Company above mentioned. It is alleged that after entering into said contract defendant in error expended a large amount of money in the improvement of the line of said railway company between the cities of Belleville and East St. Louis, so that it might meet the demands of the public desiring to transact business and might discharge its duties and obligations as a common carrier; that after it had improved the line of said Southern Railway Company between said cities a suitable grade was acquired between the station of Church and the city of Belleville over which trains could be moved with safety. It is alleged that at the time of entering into the contract with the Southern Railway Company aforesaid, it was and has since been necessary for the defendant in error to operate a double line of railway tracks between the said cities of Belleville and East St. Louis in

order to meet the demands of its business, operate its trains
with safety and discharge its duties and obligations as a
common carrier, and that since said lines have been so im-
proved freight and passengers can be safely carried from
Belleville to East St. Louis over the line of the St. Louis,
Alton and Terre Haute railroad and from East St. Louis
to Belleville over the line of the St. Louis, Belleville and
Southern Railway Company. It is further alleged that the
station at Ogle, mentioned in the petition, on the line of
the St. Louis, Alton and Terre Haute railroad, is three miles
in a south-easterly direction from the station of Church;
that it is only a flag station and no agency is maintained
there, and that there is a similar station of the same name
maintained on the line of the Southern railway about three-
quarters of a mile directly south of the said station of Ogle
on the St. Louis, Alton and Terre Haute railroad, and that
plaintiff in error and the people living in the neighborhood
of said stations are provided with ample railroad facilities,
and are not deprived of any right or convenience by rea-
son of the trains being operated on said railroad lines as
above set forth; that defendant in error could not maintain
a regular station at Ogle and could not operate trains in
both directions on the said line formerly owned by the
St. Louis, Alton and Terre Haute Railroad Company with
profit to itself, and that the demands of plaintiff in error
and people living in the vicinity of Ogle do not require that
such a station be maintained there and that trains be so op-
erated on said line of railroad. It is further alleged that
defendant in error has been operating its trains as above
set forth for more than five years prior to the filing of this
petition, and that if plaintiff in error ever had any cause of
complaint he is barred by the Statute of Limitations. It
is alleged that the action was commenced without notice of
any kind to defendant in error. A special plea of the Stat-
ute of Limitations was also filed by defendant in error.

Plaintiff in error filed a replication denying all the material allegations of the answer, and further set up that the St. Louis, Belleville and Southern railway was, at the time defendant in error began to operate it, a parallel and competing line with the line of railway then and there owned, operated and controlled by defendant in error between said cities of Belleville and East St. Louis, and was engaged in a general railroad business between said points in competition with said railroad of defendant in error, and that since entering into said contract defendant in error has wholly controlled said Southern railway and destroyed all competition between said railways. Plaintiff in error also filed a replication to the special plea of the Statute of Limitations of defendant in error. A demurrer to the replications was overruled, and on a trial before a jury a verdict was returned in favor of defendant in error. Judgment was rendered on the verdict and the plaintiff in error took the case to the Appellate Court by writ of error, where the judgment of the circuit court was affirmed, and this writ of error is sued out of this court to review the judgment of the Appellate Court.

H. E. SCHAUMLEFFEL, for plaintiff in error.

KRAMER, KRAMER & CAMPBELL, (JOHN G. DRENNAN, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error says in his brief three questions are presented by this record: "First, does the defense set up constitute a re-location of defendant in error's railroad? Second, does the defense set up constitute the consolidation, control and operation of a parallel and competing line? Third, is the interest set up sufficient to maintain this action?"

Defendant in error's witnesses testified that a single line of track between the cities of East St. Louis and Belleville was insufficient to enable defendant in error to handle the business between those two cities in such manner as would accommodate the public and discharge its duties as a common carrier; that the building of another line next to and parallel with the St. Louis, Alton and Terre Haute track was, on account of high bluffs south of the station of Ogle, through which said railroad passed, impracticable if not impossible, and for that reason the defendant in error entered into a contract with the Southern Railway Company by which it secured the right to run its cars over said railway company's track from East St. Louis to Belleville; that since said contract was entered into defendant in error has run its trains from Belleville to East St. Louis over what was formerly the St. Louis, Alton and Terre Haute track and from East St. Louis to Belleville over the Southern railway track. Said two railroad tracks run parallel with each other and not over three hundred feet apart at any place from East St. Louis to Church station, which is about one-half way between East St. Louis and Belleville. Ogle station, where plaintiff in error resides, is on the line formerly known as the St. Louis, Alton and Terre Haute railroad, about three miles south-easterly from Church, which is the direction towards Belleville. At Ogle station the Southern railway track is about three-quarters of a mile from the St. Louis, Alton and Terre Haute track, and another station, also called Ogle, is located on said Southern railway. At no place between said cities of East St. Louis and Belleville are the said tracks further apart than three-quarters of a mile.

The jury found, in answer to a special interrogatory, that a double track was necessary for the transaction of the business of the defendant in error as a common carrier between the cities of East St. Louis and Belleville. A number of witnesses on behalf of defendant in error, ex-

perienced in railroad construction, maintenance and management, testified that it was not practicable to construct another track alongside the line of the St. Louis, Alton and Terre Haute track. This latter proposition was disputed by plaintiff in error, but all controverted questions of fact were conclusively settled by the judgment of the Appellate Court. The question then arises whether, under the facts, a re-location of defendant in error's railroad is presented. We think this must be answered in the negative. (*Chicago and Alton Railroad Co.* v. *People,* 152 Ill. 230.) In that case this court cited with approval *People* v. *Rome, Watertown and Ogdensburg Railroad Co.* 103 N. Y. 95, and formulated the rule announced in that case in the following language: "Where a railroad company is the owner of two lines of road between the same points, and can substantially perform its duty to the people of the State by operating one of them exclusively for through trains and the other for local trains without serious detriment to any considerable number of people and with more advantage and convenience to a greater number of people, it will not be compelled, by *mandamus,* to operate both for local trains, where such operation of both will entail great loss and expense on the company without any return; and would also be violative of the rule that everywhere obtains, that a *mandamus* will never be awarded where the right to it is doubtful and not clear."

The second contention, that the facts proven show the consolidation, control and operation by defendant in error of a parallel and competing line, contrary to law, is not one that can be raised by plaintiff in error in this proceeding. This identical question as to these same two lines of railroad was passed upon by this court in *Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 Ill. 634. In that case the Southern Railway Company filed its petition to condemn right of way across certain lands, which was resisted by the land owner. The court said (p. 639): "The

defendants then offered to prove that the railway of petitioner was a parallel line to the Cairo Short Line railroad from East St. Louis to Belleville and that both lines were operated by the Illinois Central Railroad Company. There was no offer to show that the franchises of petitioner had been forfeited, and the court refused to admit the offered evidence. It was sufficient for the purpose of the proceeding that the petitioner was a body corporate *de facto*. (*McAuley* v. *Columbus, Chicago and Indiana Central Railway Co.* 83 Ill. 348.) While it retained its franchise the question whether or not it was improperly exercising such franchise was one between it and the State. Any question of illegal combination or arrangement entered into by it that might affect the franchise could only be raised by the People in a proceeding instituted for that purpose.—*Hudson* v. *Green Hill Seminary,* 113 Ill. 618; *Barnes* v. *Suddard,* 117 id. 237; *American Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157 id. 641."

The principal part of plaintiff in error's argument is devoted to the third proposition above quoted. It is argued that by reason of the fact that trains are run over the St. Louis, Alton and Terre Haute track in one direction only, empty coal cars cannot be delivered at Ogle station on said line sufficient for the needs of the plaintiff in error to move the coal underlying his land if a coal mine should be opened thereon, and in that manner the development of a coal mine at that place is prevented. In the first place, we do not think plaintiff in error has any right to compel the operation of trains and the handling of cars not shown to be reasonably necessary to meet any existing wants but in anticipation of needs that might arise at some future time if he should develop a coal mine and create the necessity for cars. A railroad company has some discretion in t management of its road and the running of trains thereo and while it is to some extent subject to control by the courts, the courts have no power to interfere unless

appears that the railroad company is not at the time complying with its duty, under the law, as a common carrier. This duty does not require the railroad company to provide facilities to meet demands that do not and may never exist. (*People* v. *Illinois and St. Louis Railroad and Coal Co.* 122 Ill. 506.)   Moreover, defendant in error's proof showed that shippers along both lines of the railroad between the city of Belleville and Church station were served with empty cars by switch engines from Belleville as well or better than they could be by a train service both ways on each line.

We see no basis for plaintiff in error's claim of right to the writ to compel defendant in error to provide facilities for the transportation of passengers in both directions on its St. Louis, Alton and Terre Haute line.   Persons residing at Ogle station on that line are within three-quarters of a mile of the station on the line of the Southern railway, which is reached over part of the way by a private road. It is insisted because there is no public road between the two stations that additional passenger service should be provided.   To say the least, there is no greater obligation resting upon the railroad company to provide additional passenger service on that account than there is upon the residents on the St. Louis, Alton and Terre Haute line to provide a public road to enable them to reach the station of the same name on the Southern line.   At any rate, no public need is shown for such additional passenger service. A writ of *mandamus* will be awarded only in cases where the party applying for the writ shows a clear right to it and a clear legal duty on the part of the defendant to perform the act sought to be enforced.   *People* v. *Rose,* 211 Ill. 252; *People* v. *Glann,* 70 id. 232; *People* v. *Johnson,* 100 id. 537; *Swigert* v. *County of Hamilton,* 130 id. 538; *People* v. *Dulaney,* 96 id. 503.

We find no error of the trial court in its rulings admitting and rejecting testimony or in giving and refusing in-

structions.    The rulings in these respects were in harmony
with the law governing the case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*